**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-02628-REB

JESSICA N. BAYSINGER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed September 23, 2014, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of obesity, affective disorder, degenerative changes to the right knee, substance abuse disorder, anxiety and post-traumatic stress disorder, and personality disorder. Following an earlier hearing before the agency, plaintiff's applications for disability insurance benefits and supplemental

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

security income benefits were denied. On appeal to this court, the matter was remanded for further proceedings. ***Baysinger v. Astrue***, 2012 WL 1044746 (D. Colo. March 28, 2012). A second administrative hearing was held December 7, 2012. At the time of that hearing, plaintiff was 35 years old. She has an eighth grade education and past relevant work experience as a care provider. She has not engaged in substantial gainful activity since October 1, 2005, her alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established that suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.[2] The ALJ found that plaintiff had the residual functional capacity to perform a range of light work with certain postural restrictions, which did not require dealing with the general public and required a Specific Vocational Preparation ("SVP") of 2 or less. Although this finding precluded plaintiff's past relevant work, the judge determined that there were other jobs existing in sufficient numbers in the national and local economies that he could perform. She therefore found plaintiff not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council found no basis for disturbing the ALJ's decision and refused to assume jurisdiction. Plaintiff then filed this action in federal court.

---

[2] A number of other alleged impairments were determined to be non-severe, findings plaintiff does not challenge in this appeal. (***See*** Tr. 639-641.)

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

    1.    The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

    2.    The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3.    The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

    4.    If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

> 5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).[3]  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

---

[3] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

Plaintiff brings numerous assignments of error in this appeal.  None warrants remand.  I therefore affirm the disability decision.

Plaintiff first argues that the ALJ's residual functional capacity assessment is infirm because it did not account for his finding that plaintiff "lacks the capacity to perform tasks requiring complex of detailed instructions . . . "  (Tr. 646.)  Plaintiff conveniently overlooks the remainder of this sentence, by which the ALJ stated that plaintiff nevertheless "appears fully capable of performing simple tasks such as those associated with unskilled work."  (Tr. 646.)  The ALJ incorporated that relevant conclusion into both in his hypothetical to the vocational expert (Tr. 662) and his residual functional capacity assessment (Tr. 643).

Although plaintiff insists that simple tasks may require complex instructions, she provides neither authority[4] nor examples to support this counterintuitive argument.  Nevertheless, assuming *arguendo* the existence of some such theoretical task, the ALJ's finding here is not undermined by failure to draw this distinction.  The ALJ specifically found that plaintiff had the residual functional capacity for work requiring an

---

[4] In fact, the scant authority the court has found going to this issue is to the contrary.  ***See King v. Commissioner of Social Security***, 2015 WL 300374 at *13 (E.D. Mich. Jan. 22, 2015); ***Whitaker v. Astrue***, 2010 WL 1444659 at *6 (E.D. Cal. April 12, 2010); ***McPherson v. Astrue***, 605 F.Supp.2d 744, 758 (S.D. W. Va. 2009).

SVP of 2 or less.[5]  (Tr. 643.)  That finding corresponds to unskilled work.  **See Social Security Ruling** 00-4p, 2000 WL 1898704 at *3 (SSA Dec. 4, 2000).  **See also Vigil v. Colvin**, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015).  "Unskilled work" is expressly defined as including, *inter alia*, work involving "[u]nderstanding, remembering, and carrying out simple instructions."  **Social Security Ruling** 96-9p, 1996 WL 374185 at *9 (SSA July 2, 1996).  **See also Vigil**, 805 F.3d at 1204.  Thus, a limitation to unskilled work necessarily excludes jobs that involve complex or detailed instructions.  Plaintiff's argument in this regard therefore is meritless.

Relatedly, plaintiff claims the residual functional capacity assessment fails to account for the moderate limitations in concentration, persistence, and pace the ALJ found in connection at step two of the sequential evaluation.  This argument is belied by the record.  Indeed, the ALJ thoroughly explained why he did not include further limitations on plaintiff's ability to maintain concentration, persistence, and pace in formulating her residual functional capacity at step four, ultimately concluding that such limitations did not preclude her from performing the simple tasks associated with unskilled work.  (Tr. 645-646.)  Although an unexamined equivalence between unskilled work and the ability to maintain concentration, persistence, and pace may be error, **see, e.g.**, **Groberg v. Astrue**, 505 Fed. Appx. 763, 770 (10th Cir. Dec. 14, 2012), an adequately substantiated finding – such as the ALJ made here – constitutes substantial evidence in support of the disability determination, **see Vigil**, 805 F.3d at 1204.

---

[5] "SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'"  **Dikeman v. Halter**, 245 F.3d 1182, 1186 (10th Cir. 2001).  "A job at SVP one requires 'a short demonstration only' and at SVP two requires '[a]nything beyond a short demonstration up to and including 1 month.'"  **Vigil**, 805 F.3d at 1201 n.2 (quoting **Dictionary of Occupational Titles**, App. C, Sec. II (4th ed., revised 1991), 1991 WL 688702 (G.P.O.)).

Plaintiff next faults the ALJ for failing to incorporate in the residual functional capacity assessment the moderate limitations endorsed by the non-examining psychiatrist, Dr. Alberta Ziomek.  (*See* Tr. 449-450.)  Here again, however, the ALJ's opinion clearly and adequately substantiates his reasons for doing so.  The ALJ gave Dr. Ziomek's opinion "moderate" weight because it was based on a "thorough review of the record" and "consistent with the record as a whole" (Tr. 648), and apparently fully credited Dr. Ziomek's conclusion that plaintiff had "marked" limitation in her ability to interact with the general public by limiting plaintiff's residual functional capacity in that respect (*see* Tr. 450, 643).  Nevertheless, the ALJ noted (as did the district court in the earlier appeal (*see* Tr. 677-678)) that the moderate restrictions Dr. Ziomek endorsed in the check-box portion of the form she completed did not appear to be incorporated into her ultimate, narrative opinion and lacked support in the record in any event.  (Tr. 648.)[6] This explanation, substantiated by the evidence of record, is more than sufficient to meet the ALJ's burden to adequately explain why Dr. Ziomek's proposed restrictions were not adopted.  **See Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996).[7]

---

[6] That Dr. Ziomek's opinion was consistent with that of plaintiff's treating source, Dr. Barry Coe, adds no ballast to plaintiff's arguments in this regard.  As with his consideration of Dr. Ziomek's opinion, the ALJ gave thoughtful, well-substantiated reasons for assigning only "moderate" weight to Dr. Coe's opinion and adopting only those restrictions for which he found adequate support in the record.  (*See* Tr. 647-648.)

[7] The ALJ noted that some of the restrictions Dr. Ziomek suggested appeared to be based entirely on plaintiff's subjective complaints, which he elsewhere found not credible.  (Tr. 643-646, 648.) While it is error to discredit a medical source opinion *solely* because it is based on a claimant's subjective complaints, **Nieto v. Heckler**, 750 F.2d 59, 60-61 (10th Cir. 1984), the ALJ here did not rely on that reason alone in considering Dr. Ziomek's opinion.  Moreover, "when the ALJ has properly discredited a claimant's subjective complaints of pain, he need not accept a medical source opinion premised on a contrary estimation of the claimant's credibility regarding her own functional and other limitations."  **Anderson v. Colvin**, 2013 WL 3216140 at *4 (D. Colo. June 25, 2013).  That principle would seem to apply with even greater force in considering the opinion of a non-examining source who only reviewed records and did not examine plaintiff – and thus did not have a concomitant opportunity to assess plaintiff's credibility personally.

7

As directed by the district court on remand, the ALJ also reassessed the opinion of the consultative psychiatric examiner, Dr. Brett Valette.  (*See* Tr. 649, 678-679.)  In his original disability determination, the ALJ purportedly afforded this opinion "significant weight."  (Tr. 39.)  On reconsideration, however, he concluded that Dr. Valette's report could not be construed to state a medical opinion regarding plaintiff's ability to perform work-related activities, and therefore did not assign it any particular weight.[8]  (Tr. 649.)  *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Plaintiff's suggestion that this conclusion obligated the ALJ to recontact Dr. Valette is insupportable for at least two reasons.  First, the duty to recontact a medical source is triggered only when the ALJ is unable to reach a conclusion regarding disability based on the evidence before him, not merely because he rejects that source's opinion.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001).  Second, it appears plain to this court that recontacting Dr. Valette would have been futile.  Dr. Valette described plaintiff as "vague and evasive" during her examination and questioned whether she had given full effort and had exaggerated her symptoms.  Together with the conflicting answers she gave in response to his questions, Dr. Valette stated that, overall, plaintiff was "just not credible."  (Tr. 437-439.)  In light of these

---

[8] Dr. Valette did assess plaintiff a Global Assessment of Functioning ("GAF") score of 65-70. While a GAF score is a "medical opinion" when otherwise adequately substantiated by the medical source's other records and statements, *see Givens v. Astrue*, 251 Fed. Appx. 561, 567 (10th Cir. October 18, 2007), standing alone, it does not constitute a medical opinion as defined by the regulations, *see McDonald v. Astrue*, 492 Fed. Appx. 875, 884 (10th Cir. July 23, 2012).  *See* 20 C.F.R. § 404.1527(a)(2).

8

statements, it appears clear to this court that Dr. Valette could not have given a supportable medical opinion about her work-related functional abilities in any event.

Plaintiff next claims error also in the ALJ's alleged failure to conduct a function-by-function assessment of her physical residual functional capacity, as the district court ordered on remand. (*See* Tr. 671.) **See Social Security Ruling** 96-8p, 1996 WL 374184 at * 3-4. **See also Alexander v. Barnhart**, 74 Fed. Appx. 23, 28 (10th Cir. Sept. 2, 2003) ("SSR 96–8p . . .requires separate consideration "of seven strength demands: i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling."). Unlike the judge in **Alexander**, the ALJ here did not define plaintiff's residual functional capacity merely in terms of a broad exertional category, but instead found her capable of "light work *as defined in* 20 CFR 404.1567(b) and 416.967(b)," with certain further refinements. (Tr. 643 (emphasis added).) The cited regulations define light work in terms of its lifting, sitting, standing, and walking requirements. *See* 20 C.F.R. § 404.1567(b). The ALJ's finding that plaintiff could perform the demands of this work is supported by the ALJ's thoroughgoing examination of the evidence of plaintiff's alleged physical impairments and their alleged effects of her functionality. (Tr. 644-645.)

Moreover, plaintiff points to the nothing in the record which contradicts the ALJ's assessment of this evidence, and nothing in the regulations requires the ALJ to mindlessly recite these factors a litany regardless of the circumstances:

> A function-by-function assessment of an individual's limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work. But an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.

***Zatz v. Astrue***, 2009 WL 3198743 at *4 (7th Cir. Oct. 5, 2009).  There is no evidence here, and plaintiff points to none, to suggest physical or mental limitations more restrictive than those imposed by the ALJ.  Reversal therefore is not warranted on this basis either.

Finally, plaintiff faults the ALJ's finding her testimony and subjective complaints regarding her functional and other limitation not fully credible.  (Tr. 644-646.)  in general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  ***White v. Barnhart***, 287 F.3d 903, 909 (10th Cir. 2001) (citing ***Kepler v. Chater***, 68 F.3d 387, 390-91 (10th Cir. 1995)).  The ALJ here gave clear, specific, legitimate reasons linked to specific evidence in the record for his credibility assessment.  Contrary to plaintiff's characterization, this determination was neither conclusory nor mere boilerplate.  The ALJ thoroughly examined and discussed the evidence in arriving at his conclusion, which is more borne out by the record.  Nothing in that determination provides grounds to disturb the disability determination.

## IV.  ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 25, 2016, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge